# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAJINDER PAL SINGH,
        *Petitioner-Appellant,*

v.

JANET NAPOLITANO;* NANCY
ALCANTAR; ERIC H. HOLDER JR.,**
Attorney General,
        *Respondents-Appellees.*

No. 07-16988

D.C. No.
CV-07-03943-MMC
Northern District of
California,
San Francisco

ORDER

Filed April 18, 2011

Before: J. Clifford Wallace and Jerome Farris,
Circuit Judges.

---

## ORDER

The opinion filed on August 23, 2010 is amended as follows:

On page 12609 of the slip opinion, line 5: Insert footnote "¹" after the sentence that ends, "280." The text of the footnote should read: "Where an agency's adjudicatory action has a retroactive effect, we have applied a five-factor test to determine whether application of the new administrative decision would be "contrary" to "legal and equitable principles." *See Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322 (9th Cir. 1982). Nonetheless, because we conclude that application

---

*Janet Napolitano has been substituted for her predecessor, Michael Chertoff, as Secretary of Homeland Security. Fed. R. App. P. 43(c)(2).

**Eric H. Holder Jr. has been substituted for his predecessor, Alberto Gonzales, as Attorney General. Fed. R. App. P. 43(c)(2).

5123

of *Compean II* to Singh would not have a retroactive effect under *Landgraf*, we need not reach the less stringent standard set forth in *Montgomery Ward*."

With this amendment, no further motions or petitions may be filed.

RAJINDER PAL SINGH,
          *Petitioner-Appellant,*

          v.

JANET NAPOLITANO;* NANCY
ALCANTAR; ERIC H. HOLDER JR.,**
Attorney General,
          *Respondents-Appellees.*

No. 07-16988

D.C. No.
CV-07-03943-MMC

AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted
January 13, 2009—San Francisco, California

Filed August 23, 2010
Amended April 18, 2011

Before: J. Clifford Wallace, Jerome Farris and
M. Margaret McKeown, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge McKeown

*Janet Napolitano has been substituted for her predecessor, Michael Chertoff, as Secretary of Homeland Security. Fed. R. App. P. 43(c)(2).

**Eric H. Holder Jr. has been substituted for his predecessor, Alberto Gonzales, as Attorney General. Fed. R. App. P. 43(c)(2).

## COUNSEL

James Todd Bennett, El Cerrito, California, for the petitioner-appellant.

Joseph P. Rusoniello, United States Attorney; Joann M. Swanson, Assistant United States Attorney; Edward Olsen, Assistant United States Attorney, San Francisco, California, for the respondents-appellees.

---

## OPINION

PER CURIAM:

Rajinder Singh appeals from the district court's order denying his petition for habeas corpus, filed pursuant to 28 U.S.C. § 2241. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We affirm.

In order to seek habeas relief under section 2241, as Singh does, a petitioner must first, "as a prudential matter," exhaust his or her available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). In denying Singh's habeas petition, the district court ruled that Singh failed to satisfy this prudential exhaustion requirement because he did not first raise his ineffective assistance of counsel claim before the Board of Immigration Appeals (Board). Singh argues that he should not be required to raise his claim first with the Board because the Board lacks jurisdiction to review such claims where, as here, the alleged ineffective assistance occurred after a final order of removal has been entered.

## I.

While this case was pending before us, former Attorney General Mukasey decided *In re Compean (Compean I)*, 24 I

& N Dec. 710 (A.G. 2009). In that decision, Attorney General Mukasey concluded, inter alia, that the Board has "jurisdiction to consider deficient performance claims even where they are predicated on lawyer conduct that occurred after a final order of removal has been entered." *Id.* at 740. Subsequently, Attorney General Holder vacated *Compean I* in its entirety. *In re Compean (Compean II)*, 25 I & N Dec. 1, 3 (A.G. 2009). However, Attorney General Holder agreed that the Board's "discretion to reopen removal proceedings includes the power to consider claims of ineffective assistance of counsel based on conduct of counsel that occurred after a final order of removal had been entered." *Id.*

The Attorney General's interpretation of the Board's jurisdictional statute, 8 C.F.R. § 1003.2 (2008), is reasonable, and we therefore defer to it. *See Barapind v. Reno*, 225 F.3d 1100, 1113-14 (9th Cir. 2000) (holding that we review an agency's interpretation of the regulations governing its jurisdiction for reasonableness). Under this authoritative interpretation, the Board had jurisdiction to hear Singh's ineffective assistance claim, and Singh's petition would fail for failure to exhaust this administrative remedy. However, *Compean II* was decided after Singh filed his habeas petition.

In light of *Compean II*, we remanded this case to the Board. In our limited remand order, we stated:

> The case is remanded to the Board of Immigration Appeals for the limited purpose of ruling upon whether the Board had jurisdiction to hear Singh's ineffective assistance of counsel claims and what effect, if any, the Attorney General's recent opinion in *In re Compean*, 25 I & N Dec. 1, 3 (A.G. 2009), has on this case. The Board shall advise this court of any action or decision.

*Singh v. Napolitano*, 577 F.3d 988, 988-89 (9th Cir. 2009).

The Board has now replied to our limited remand order. In its response, the Board points out that throughout the course of Singh's proceedings the regulations provided that the Board may reopen "any case in which it has rendered a decision." The Board states that it had jurisdiction to hear Singh's ineffective assistance of counsel claim "if one had been advanced in a motion." The Board recognizes, at the same time, that during the relevant period it "had not resolved in a published decision whether its discretion to reopen proceedings included the power to consider claims of ineffective assistance of counsel based on conduct of counsel after an administratively final order had been entered and the Board had issued different decisions on this issue." The Board states that, as a factual matter, it "did regularly reissue decisions where a lack of notice of the Board's original decision resulted either from administrative error at the Board or from ineffective assistance of counsel." Thus, the Board concludes, it cannot "state definitively how a motion raising such a claim would have been adjudicated years ago in this case . . . ." Finally, the Board states that the *Compean II* case "had no meaningful effect on this case because there has never been a motion pending before the Board in these proceedings."

## II.

**[1]** Therefore, we must determine whether we may properly apply *Compean II* to Singh's petition at the present time. In *Landgraf v. USI Film Products*, 511 U.S. 244, 263-80 (1994), the Supreme Court offered guidance to courts faced with the prospect of applying new law to pending cases. In that case, the Court sought to resolve the "apparent tension" between its prior admonition to apply the law in effect at the time of decision, with the equally long-standing presumption against the retroactive application of newly enacted laws and regulations. *Id.* at 263, citing *Bradley v. School Bd. of Richmond*, 416 U.S. 696 (1974). In that regard, the Court clarified that a new law should not apply to cases heard prior to its enactment if the law has "genuinely 'retroactive' effect."

*Landgraf*, 511 U.S. at 277. That is, a new law will not apply if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280.[1]

**[2]** None of these "genuinely retroactive" conditions exist in this appeal. First, application of *Compean II* to this case would not "impair rights [Singh] possessed when he acted" because no such rights are at stake here. Singh's right to bring a habeas petition is conditioned upon our prudential administrative exhaustion doctrine, which is now at issue. Second, there is no concern that applying *Compean II* now would "increase [Singh's] liability for past conduct." *Landgraf*, 511 U.S. at 280. Third, we must consider whether retroactive application of *Compean II* would "impose [on Singh] new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. This final criteria draws on "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* at 265. Thus, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in evaluating whether *Compean II* would improperly impose "new duties" on Singh. *Id.* at 270.

**[3]** Prior to *Compean II*, the Board ruled inconsistently on the issue of its jurisdiction to review deficient performance claims concerning post-final order attorney conduct. *See Afanwi v. Mukasey*, 526 F.3d 788, 795 nn.25-26 (4th Cir. 2008) (citing contradictory Board decisions), *vacated* 130 S.

---

[1]Where an agency's adjudicatory action has a retroactive effect, we have applied a five-factor test to determine whether application of the new administrative decision would be "contrary" to "legal and equitable principles." *See Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322 (9th Cir. 1982). Nonetheless, because we conclude that application of *Compean II* to Singh would not have a retroactive effect under *Landgraf*, we need not reach the less stringent standard set forth in *Montgomery Ward*.

Ct. 350 (2009). In *Afanwi*, 526 F.3d at 795-96, the Fourth Circuit held that the Board does not have such jurisdiction. Whatever the merits of the Fourth Circuit's position, however, we have twice stated, in unequivocal language, that the Board does have jurisdiction to hear claims such as Singh's. *See Lata v. INS*, 204 F.3d 1241, 1245-46 (9th Cir. 2000) ("[T]he Board has laid out a comprehensive procedure that a petitioner should follow to support [an ineffective assistance] claim"); *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1044 n.4 (9th Cir. 2000) ("A claim of ineffective assistance of counsel occurring after the Board has ruled may be raised with the Board by filing a motion to reopen").

In both instances, our language may have been inessential dicta. *See Lata*, 204 F.3d at 1245-46; *Dearinger*, 232 F.3d at 1044 n.4. Nevertheless, our meaning was clear, and we have not contradicted it. Other circuits have since adopted the same position. *See Zhao v. INS*, 452 F.3d 154, 157-60 (2d Cir. 2006); *Sako v. Gonzales*, 434 F.3d 857, 862-66 (6th Cir. 2006); *Firmansjah v. Ashcroft*, 347 F.3d 625, 627 (7th Cir. 2003).

**[4]** Our decisions, along with those of other circuits, provided Singh fair notice and the ability to anticipate that the Board may have jurisdiction over his claim. Thus, we hold that *Compean II*, which affirmed our language in *Lata* and *Dearinger*, does not create "new duties" for Singh with respect to his habeas petition.

**[5]** For these reasons, we conclude that applying *Compean II* to this case would not have genuinely retroactive effect. The prudential exhaustion doctrine is well established, and was neither new nor unanticipated. While an authoritative declaration that the Board has jurisdiction to hear ineffective assistance of counsel claims may be new, it simply confirmed our prior statements on the subject. We therefore apply *Compean* and conclude that Singh did not exhaust his available administrative remedies because he did not first file a motion

to reopen with the Board before bringing his habeas petition in district court.

At oral argument, Singh presented a new argument. He argued that failure to exhaust should be excused, because he had already been removed from the country, and a post-departure motion to reopen a removal hearing is futile. Singh did not raise this futility argument before the district court. "Generally, an issue raised for the first time on appeal is deemed waived." *WildWest Inst. v. Bull*, 547 F.3d 1162, 1172 (9th Cir. 2008). We deem the argument waived.

**AFFIRMED.**

---

McKEOWN, Circuit Judge, Dissenting:

I respectfully dissent. The heart of Singh's claim is that his counsel failed to notify him of the final decision of the Board of Immigration Appeals ("BIA") and failed to preserve his right to judicial review by the Ninth Circuit. The question is whether Singh was required to exhaust this claim at the BIA before filing his habeas corpus petition in federal court. I would hold that he was not required to do so—at the time Singh filed his habeas petition, there was no clear administrative option to exhaust.

The majority reaches the opposite conclusion by refusing to take the BIA at its word and relying instead on scattered dicta from our precedents. Rather than trying to read between the lines as to BIA practice or policy, we remanded this petition to the BIA so that the BIA could tell us whether Singh had the option to file a motion to reopen in order to pursue his claim. The BIA explained on remand that it was uncertain at best whether a motion to reopen was available to Singh to raise his ineffective assistance claim at the time he filed his habeas petition. By requiring that Singh seek reopening nonetheless,

the majority holds Singh responsible for exhausting an administrative remedy that the BIA itself acknowledges may not even have existed. The majority's retroactive application of the Attorney General's holding in *Matter of Compean*, 25 I&N Dec. 1, 3 (AG 2009)—that the BIA has jurisdiction over such claims—does not help matters. If anything, the majority's approach highlights the formerly confused state of the law and the unfairness of requiring exhaustion of Singh.

The questions of exhaustion and access to relief through a motion to reopen are not inconsequential nor are they abstract procedural issues. Time and again we see underrepresentation and poor quality of representation in immigration proceedings. Time and again we see cases where petitioners have retained counsel who failed to file a timely notice of appeal.

These unfortunate cases represent the classic "good news, bad news" scenario: the good news is that the petitioner had a lawyer; the bad news is that the petitioner had a lawyer. The positive note is that individuals facing the potentially dire consequences of deportation managed to retain counsel to help them navigate the complicated U.S. immigration legal system, but the tragic consequence and the bad news is that some of these lawyers fail to conform to even the most minimal standards of professional competence. Highlighting the unprofessional conduct of these lawyers is not meant to denigrate in any way the many extraordinary immigration lawyers who practice before us. Rather, this discussion underscores the importance of having a meaningful remedy when a lawyer misses an appeal deadline through no fault of the client.

We remanded this case to the BIA to clarify the predicate question to the district court's holding on exhaustion: namely, whether the BIA even had jurisdiction in the first place to entertain the claim Singh sought to raise on habeas. We also asked the BIA to address the application of the Attorney General's intervening decision in *Compean*, 25 I&N Dec. at 3,

that the BIA may hear claims of ineffective assistance based on counsel's conduct after entry of a final order of removal. *Singh v. Napolitano*, 577 F.3d 988, 988-89 (9th Cir. 2009). Notably, *Compean* expressly "[left] it to the Board to determine the scope of [its] discretion" over such claims. 25 I&N Dec. at 3.

The Board's response on remand, although qualified,[1] counsels that it is unreasonable to hold Singh to an exhaustion requirement here. Most importantly, the Board confirmed that its jurisdiction over ineffective assistance claims concerning counsel's conduct after entry of a removal order was unclear at the time Singh filed his habeas petition. Thus, the Board could not determine with certainty whether it would have adjudicated Singh's claim on a motion to reopen. As the Board explained:

> During the relevant period, the Board had not resolved in a published decision whether its discretion to reopen proceedings included the power to consider claims of ineffective assistance of counsel based on conduct of counsel after an administratively final order had been entered and the Board had issued different decisions on this issue. Thus, we cannot state definitively how a motion raising such a claim would have been adjudicated in the absence of a motion actually having been filed by the applicant.

*In re Singh*, A 071 789 054, at *2 (BIA Apr. 30, 2010) (citations omitted).

---

[1]The Board emphasized that because Singh never filed a motion to reopen, its opinion was "necessarily theoretical" and that it could not "state with certainty how any hypothetical motion would have been adjudicated had such a motion been filed." *In re Singh*, A 071 789 054, at *2 (BIA Apr. 30, 2010).

The BIA's reference to its "different decisions" is something of a euphemism. As noted by the Attorney General and Fourth Circuit, the BIA's position on this issue during the relevant time period was frankly contradictory. *See Compean*, 25 I&N Dec. at 3; *Matter of Compean, Bangalay & J-E-C-*, 24 I&N Dec. 710, 740 (AG 2009) (noting that "the Board has not spoken consistently on the question of when deficient performance must occur to permit reopening"); *Afanwi v. Mukasey*, 526 F.3d 788, 795-96 (4th Cir. 2008) (noting that the Board "has issued contradictory opinions on the subject" and citing cases). As a result, the Attorney General, in the first and second *Compean* decisions, sought to clean up the Board's jurisdictional mess by ruling, in definitive terms, that the Board had jurisdiction to hear such claims on a motion to reopen. *Compean*, 25 I&N Dec. at 3; *Compean*, 24 I&N Dec. at 739-41. Here, however, the Board declined on remand to address whether *Compean* applies retroactively to Singh's case or, if it did, whether the Board's jurisdiction under *Compean* extended to Singh's claim. *In re Singh*, A 071 789 054, at *2.

At bottom, the BIA's answer to our question regarding its jurisdiction thus seems to be "we can't be sure."[2] If the BIA is uncertain, then surely it is unreasonable to impute certainty to Singh. In my view, the BIA's jurisdiction over Singh's claim was not sufficiently clear such that he can be held responsible for raising his claim on a motion to reopen. *See Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (noting that exhaustion may be waived "where administrative remedies are inadequate or not efficacious") (internal quotation marks omitted). The Board has explained that it simply cannot know whether it had the authority to hear Singh's claim

---

[2]The BIA also noted, incoherently, that the "pertinent regulations" provided the BIA with "jurisdiction to hear [Singh's] ineffective assistance of counsel claim if one had been advanced in a motion." *In re Singh*, A 071 789 054, at *2 (citing 8 C.F.R. § 1003.2(a)). I presume that the BIA means to say that despite its general authority to hear ineffective assistance claims on a motion to reopen, its jurisdiction over Singh's claim was unclear.

because it took no principled position on the issue during the relevant time period. It is therefore totally up in the air whether the remedy that Singh was putatively required to exhaust even existed.

Although the majority purports to defer to the agency's interpretation of its own jurisdiction, it ignores the BIA when it tells us that it can't know whether it would have even heard Singh's claim. The majority's approach effectively requires that individuals like Singh fight threshold battles over jurisdiction and pursue remedies whose existence is in doubt in order to exhaust their claims. But that is not the law. Rather, habeas petitioners are prudentially required to exhaust only "*available*" administrative remedies—not remedies whose existence is disputed. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (emphasis added), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

The majority's citation of our "precedent" on this issue is also unavailing. As the majority suggests, our previous statements regarding the availability of motions to reopen were at best "inessential dicta." *See Lata v. INS*, 204 F.3d 1241, 1245-46 (9th Cir. 2000); *Dearinger ex rel, Volkova v. Reno*, 232 F.3d 1042, 1044 n.4 (9th Cir. 2000).[3] Although one might have preferred that the BIA would have adhered to our dicta on its jurisdiction, rejected these statements in a reasoned decision, or, indeed, taken any coherent position on this issue, one thing is certain: in the face of *Lata* and *Dearinger*, the

---

[3]In *Lata*, we assumed, without analysis, that the petitioner could have raised her ineffective assistance claim on a motion to reopen and suggested that she was required to exhaust such remedies, but held that, in any event, she failed to show prejudice from counsel's conduct. *Lata*, 204 F.3d at 1245-46. In *Dearinger*, we cited *Lata* for the proposition that a motion to reopen was available, but the petitioner's failure to exhaust it "[did] not bar this court from hearing the claim." *Dearinger*, 232 F.3d at 1044 n.4.

fate of Singh's claim at the Board remained uncertain. The Board itself has told us so.

This lack of clarity makes the retroactive application of *Compean* inappropriate. In applying *Compean* retroactively, the majority acknowledges the murky state of affairs at the Board during the relevant time period. But the majority fails to appreciate that this very murkiness makes *Compean*'s application to this case impermissible. Because the BIA's jurisdiction was hitherto uncertain, the retroactive application of *Compean* stands to "impose [on Singh] new duties with respect to transactions" already completed and conflicts with "[e]lemental considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landsgraf v. USI Film Prods.*, 511 U.S. 244, 265, 280 (1994). In *Compean* itself, the Attorney General explained that, prior to the Attorney General's first *Compean* decision in 2008, the Board had not resolved the issue of its jurisdiction and that it was therefore necessary to decide this issue in definitive terms. 25 I&N at 3. Similarly, the Board has told us in this case that it took contradictory positions on its jurisdiction and cannot "state definitively" whether it would have heard Singh's claim and that *Compean* has since resolved this issue. *In re Singh*, A 071 789 054, at *2-3. I am hard-pressed to imagine a clearer statement of the jurisdictional fog that existed at the time Singh came to seek habeas relief. Surely there was no way for Singh to "know what the law [was] and to conform [his] conduct accordingly." *Landsgraf*, 511 U.S. at 265, if the agency itself had no firm position. The lack of clarity regarding the remedies available to Singh at the time he filed his petition makes the imposition of an exhaustion requirement on him now unjustified. We should not see light where none existed, nor should we project it retrospectively.[4]

---

[4]As an aside, I note that, *Compean* notwithstanding, it is *still* unclear that the Board will afford Singh a remedy. Singh has been removed from

In view of the BIA's response to us, I would reverse the district court's dismissal of Singh's habeas petition for lack of exhaustion and remand for a ruling on the merits of his ineffective assistance claim. This resolution follows from the jurisdictional murkiness that existed when Singh filed in district court. The only avenue this remedy provides is an opportunity, not a guarantee, to pursue a claim forfeited by a lawyer who failed to filed a timely notice of appeal.

---

the United States. Although we have held that *Singh* is nonetheless entitled by regulation to a post-departure motion to reopen, *see Lin v. Gonzales*, 473 F.3d 979, 982 (9th Cir. 2007); *Reynoso-Cisneros v. Gonzales*, 491 F.3d 1001, 1002 (9th Cir. 2007), the BIA has rejected our analysis and held that it lacks authority to reopen proceedings once a non-citizen has left the United States after the completion of removal proceedings. *Matter of Armendarez-Mendez*, 24 I&N Dec. 646, 650-52 (BIA 2008) (construing 8 C.F.R. § 1003.2(d)). The BIA has expressly "decline[d] to follow [*Lin* and *Reynoso-Cisneros*] *even within the Ninth Circuit.*" *Id.* at 652 (emphasis added).